William Forest BIG SPRING Sr.,
Plaintiff/Appellant,

v.

The UNITED STATES of America,
BUREAU OF INDIAN AFFAIRS,
et al., Defendants/Appellees.

Melba Josephine Arnoux WOODHOUSE,
Plaintiff/Appellant,

v.

The UNITED STATES of America,
BUREAU OF INDIAN AFFAIRS,
et al., Defendants/Appellees.

Nos. 84–4141, 84–4170.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 1985.

Decided July 31, 1985.

John P. Moore, Cut Bank, Mont., for plaintiff/appellant.

Philip Roy, Browning, Mont., William B. Lazarus, Washington, D.C., for defendants/appellees.

Before CHOY, HUG, and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Big Spring and Woodhouse, Blackfeet Indians (plaintiffs), appeal the dismissal of their claims that the mineral rights to their federal land allotments were wrongfully reserved for the Blackfeet Tribe by the Bureau of Indian Affairs. Because the district court did not have jurisdiction over the defendants, the United States and the Tribe, we affirm the dismissal.

## FACTS

The General Allotment Act of 1887, 25 U.S.C. §§ 331–358 (1982), established procedures for selection of allotments of reservation land to individual Indians. Section 332 provides that Indians shall make selections for themselves and their minor children, and that if anyone eligible for an allotment fails to select one within four years of the start of allotment on that reservation, the Secretary of the Interior (Secretary) "may direct" that an allotment be selected for that person.

The Act of March 1, 1907 (Blackfeet Allotment Act), 34 Stat. 1015, 1035, authorized allotments on the Blackfeet reservation pursuant to the provisions of the General Allotment Act. Big Spring and Woodhouse are members of the Blackfeet Tribe. Woodhouse was born in 1912; Big Spring was born in 1916. For reasons not explained in any of plaintiffs' pleadings, selection was not made for either plaintiff until 1922. In the intervening time, Congress had passed the Act of June 30, 1919 (Mineral Act), § 10, 41 Stat. 3, 17, which provided that all future Blackfeet allotments contain a reservation of the mineral rights in the allotted land to the Blackfeet Tribe. Plaintiffs' patents contain this reservation.

Plaintiffs separately filed suit in federal district court against the United States and the Blackfeet Tribe, seeking declarations that they had owned the mineral rights in their allotments since 1922, and seeking damages including the amount of income that the Tribe had received for their mineral rights since 1922. Plaintiffs claimed that the United States had a duty to see that they received their allotments, and by failing to do so before Congress passed the Mineral Act, the United States deprived them of their mineral rights.

The United States and the Tribe separately moved to dismiss each complaint. The Tribe's motion asserted three grounds: sovereign immunity of the Tribe, laches, and failure to state a claim upon which relief could be granted. The United States' motion also asserted three grounds: sovereign immunity of the United States, the statute of limitations, and failure to state a claim. The district court consolidated the cases for pretrial purposes and ultimately dismissed both complaints. The court did not address tribal sovereign immunity, but concluded that it had jurisdiction under section 345 of the General Allotment Act, which provides that Indians who claim to have been unlawfully denied an allotment may bring suit against the United States in district court. The court then held that the complaints failed to state claims on which relief could be granted, because plaintiffs did not have vested rights to allotments when the Mineral Act was passed. The opinion does not mention the statute of

limitations or laches issues. Plaintiffs' single and joint appeals from this judgment were consolidated in this court.

## STANDARD OF REVIEW

All of the questions presented by this appeal are issues of law which this court reviews de novo. *See Halet v. Wend Investment Co.*, 672 F.2d 1305, 1309 (9th Cir.1982). We may affirm the district court on any ground supported by the record, even if the district court relied on different reasons. *Salmeron v. United States*, 724 F.2d 1357, 1364 (9th Cir.1983).

## I. JURISDICTION OVER THE UNITED STATES

### A. *Sovereign Immunity*

Plaintiffs base jurisdiction over the United States on section 345 of the General Allotment Act, which permits federal courts to determine whether an Indian allottee has been deprived of an allotment or rights connected with an allotment. *Christensen v. United States*, 755 F.2d 705, 707 (9th Cir.1985). This court has previously held that section 345 is a waiver of the United States' sovereign immunity. *Id; Scholder v. United States*, 428 F.2d 1123, 1126 (9th Cir.), *cert. denied*, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246 (1970).

■ The United States does not dispute this general principle, but contends that it is immune because section 345 does not apply to suits over mineral rights. This contention is meritless. Section 345 is not limited to actions to compel issuance of an allotment; it permits actions to define or protect an allotment once issued. *Christensen*, 755 F.2d at 707 (suit for right of way over federal land to landlocked allotment); *Loring v. United States*, 610 F.2d 649, 650 (9th Cir.1979) (inverse condemnation of allotted lands); *United States v. Pierce*, 235 F.2d 885, 888–89 (9th Cir.1956) (suit to compel allotment of land and appurtenant water rights); *accord Begay v. Albers*, 721 F.2d 1274, 1277–78 (10th Cir.1983)

(suit to cancel forged deeds conveying allottees' allotments to non-Indians).

The United States relies principally on *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). *Ute Citizens* held that section 345 did not waive the United States' immunity in a suit for mineral rights reserved for a tribe by the United States. Section 345 did not apply because the rights in question were appurtenant to tribal land, not to the plaintiffs' allotments. *Id.* at 142–43, 92 S.Ct. at 1466–67. *Ute Citizens* is not on point because plaintiffs seek mineral rights appurtenant to their allotments. In the other cases cited by the United States, the courts similarly refused to apply section 345 because the claims did not concern plaintiffs' individual allotments. *See, e.g., Scholder*, 428 F.2d at 1126 (suit challenging BIA management of tribal irrigation system). Plaintiffs' claims in essence seek to compel issuance of the missing mineral rights appurtenant to their allotments, and section 345 applies in this case to waive the United States' sovereign immunity.

### B. *Statute of Limitations*

■ The United States argues that 28 U.S.C. § 2401(a) (1982), which provides a six-year statute of limitation for "every civil action commenced against the United States," bars this suit. Section 2401(a), if it applies, is jurisdictional. *Loring*, 610 F.2d at 650. Until recently, there was some doubt as to whether section 2401(a) always applied to section 345 claims, because this circuit, without discussing the statute, has reached the merits of claims that clearly had accrued more than six years before suit was filed. *See Sampson v. United States*, 533 F.2d 499 (9th Cir. 1976) (per curiam). There have also been doubts as to whether section 2401(a) applies to both legal and equitable relief sought under section 345. The recent *Christensen* opinion, however, unequivocally holds that section 2401(a) applies to all section 345 claims, whether for legal or equitable relief.[1] *Christensen*, 755 F.2d at

---

**1.** The Eighth Circuit has held section 2401(a)     inapplicable to a section 345 claim, but only in

708 (explicitly holding that any sub silentio ruling in *Sampson* must be disregarded in light of *Loring* and *Werner v. United States,* 188 F.2d 266, 268 (9th Cir.1951) (§ 2401(a) applies to all actions against the United States except criminal or admiralty proceedings)). Moreover, this circuit has twice rejected the argument that the United States may not invoke a statute of limitations against an Indian because of the special trust relationship between the government and the Indians. *Christensen,* 755 F.2d at 707–08 (§ 345 claim); *Mann v. United States,* 399 F.2d 672, 673 (9th Cir. 1968) (Federal Tort Claims Act statute of limitations). The district court had no jurisdiction over the United States, and did not err in dismissing the claims against it.

## II. JURISDICTION OVER THE TRIBE

The Tribe did not raise sovereign immunity on appeal. We must nevertheless consider the issue because tribal immunity is jurisdictional. *Puyallup Tribe, Inc. v. Department of Game,* 433 U.S. 165, 173, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977); *see United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 512–13, 60 S.Ct. 653, 656–57, 84 L.Ed. 894 (1940) (tribal immunity not waived by failure to raise it at trial or on appeal).

■■■■ Indian tribes, as sovereign entities, are generally immune from suit. *San-*

*ta Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978) (claims under Indian Bill of Rights); F. Cohen, *Handbook of Federal Indian Law* 324 (2d ed. 1982). A tribe may waive this immunity by consenting to suit in its constitution or a tribal ordinance. *E.g., Merrion v. Jicarilla Apache Tribe,* 617 F.2d 537, 540 (10th Cir.1980) (en banc), *aff'd,* 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982); *Fontenelle v. Omaha Tribe,* 430 F.2d 143, 147 (8th Cir.1970). Congress, pursuant to its plenary authority over Indian affairs, may also waive this immunity, but that waiver cannot be implied. It must be unequivocally expressed. *Santa Clara Pueblo,* 436 U.S. at 58–59, 98 S.Ct. at 1677.

■■■■ There is nothing in the record which indicates that the Blackfeet Tribe has waived immunity to this suit by its constitution or by any ordinance. Thus, the only potential source of a waiver is section 345.[2] This section does not mention tribes: it provides that "the parties [to section 345 suits] shall be the claimant as plaintiff and the United States as party defendant." Any waiver of tribal immunity in section 345 must be by implication, and *Santa Clara Pueblo* forbids implying such a waiver. 436 U.S. at 58–59. We conclude that the district court had no jur-

---

very narrow circumstances. *See Mottaz v. United States,* 753 F.2d 71, 74 (8th Cir.1985). *Mottaz* applied the principle that when Indian allotment land is conveyed in violation of restrictions on its alienability, title is not transferred. Because the underlying conveyance is void, the Indian allottee retains title. Thus, the court reasoned, the concept of a cause of action accruing is inapplicable, and the statute of limitations cannot apply. *Id.* This rule by its terms cannot apply in this case.

**2. § 345. Actions for Allotments**
All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action,

suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him, but this provision shall not apply to any lands now held by either of the Five Civilized Tribes, nor to any of the lands within the Quapaw Indian Agency: *Provided,* That the right of appeal shall be allowed to either party as in other cases.

isdiction over the Tribe because of the Tribe's sovereign immunity.[3] The district court did not err in also dismissing the complaints against the Tribe.[4]

The judgment of the district court is AFFIRMED.

**3.** The only section 345 case that we have found which addresses immunity held that the tribe had consented to suit in its charter. *Fontenelle,* 430 F.2d at 147. This holding implicitly recognized that without such consent the tribe was immune.

**4.** Appellant Woodhouse suggested without citation at oral argument that the Tribe is a person under 42 U.S.C. § 1983 (1982), and that section 1983 waives the Tribe's sovereign immunity as well as providing a cause of action. Plaintiffs' complaints included section 1983 claims. We decline to address this issue because it was not briefed and therefore was not properly before the court. *See* Fed.R.App.P. 28(a); *Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983) ("where counsel has made no attempt to address [important issue of first impression], we will not remedy the defect"). We note, however, that this circuit recently held that section 1983 claims may not be brought against a tribe. *R.J. Williams Co. v. Fort Belknap Housing Authority,* 719 F.2d 979, 982 (9th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).