721 F.2d 657
 James Joseph NICHOLS, Plaintiff-Appellant,
v.
E.T. HUGHES, Captain, U.S.N., Commanding Officer, U.S. Naval
Air Station, Midway Island, or his servants, agents, or
employees, and The Secretary of the Navy, his servants,
agents, or employees, Defendants-Appellees.
 No. 82-4221.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Sept. 12, 1983.
Decided Dec. 6, 1983.
 
 James Joseph Nichols, in pro. per.
 Yoshinori Y.T. Himel, Sacramento, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before CHOY and NORRIS, Circuit Judges, and CURTIS,* District Judge.
 CHOY, Circuit Judge:
 
 
 1
 James Nichols brought this suit in 1979 seeking equitable relief for his allegedly wrongful discharge from the Navy in 1957. He did not seek damages. The district court granted summary judgment against him, and he now appeals. We hold that Nichols' claims are barred by the statute of limitation, 28 U.S.C. Sec. 2401(a). We affirm the judgment of the district court.
 
 I. STATEMENT OF FACTS
 
 2
 James Nichols was discharged from the Navy on August 13, 1957. His discharge status was listed as "undesirable by reason of unfitness" because Nichols had allegedly engaged in homosexual acts. Nichols, however, maintains that the statements he signed which formed a major part of the Navy's decision to discharge him were coerced, and that he was never able to find out what really happened to him until he obtained documents in 1977 pursuant to the Freedom of Information Act.
 
 
 3
 According to Nichols, he was awakened on June 24, 1957 and brought into the office of a Mr. Vickery from the Office of Naval Intelligence. Vickery told Nichols that he had received a written statement from a certain sailor naming Nichols as his partner in various homosexual acts. Vickery said that if Nichols were to sign a statement admitting involvement in those acts, he would receive an undesirable discharge which would be upgraded to a general discharge after one year. If he did not sign, he would be haled before a general court-martial and face a sentence of up to five years' imprisonment and a dishonorable discharge. Nichols signed the statement. Several days later, Nichols was called to the commander's office to sign more documents. Nichols at first refused to sign, since the people in that office made no mention of upgrading the discharge after one year. Nichols was then thrown in the brig, where he remained for two weeks doing manual labor amid the taunts of the guards before he signed the requested documents and was released.
 
 
 4
 During 1957 and 1958, Nichols pursued military administrative remedies in an attempt to upgrade his discharge so he would be entitled to educational and other benefits. In connection with those appeals, he sought to examine documents used against him in the discharge proceedings. He was refused access to some documents and given copies of others with all names except his own obliterated. His appeals to the Navy Discharge Review Board, the Board of Veterans Appeal, and the Board for Correction of Naval Records were unsuccessful.
 
 
 5
 In 1975, Nichols renewed his plea to the Board for Correction of Naval Records. This time, his appeal was successful. The Board in January 1977 found that there had been "an injustice warranting corrective action" and recommended that his discharge be upgraded to a "general discharge by reason of misconduct." An Assistant Secretary of the Navy approved the Board's recommendation one month later.
 
 
 6
 Nichols filed an initial complaint in federal district court on October 30, 1979. His second amended complaint alleged that various Navy officers had violated the Constitution and Navy regulations, and had otherwise deprived Nichols of his civil rights by their conduct leading to his 1957 discharge. Nichols sought a declaration that the 1957 discharge was void and an order reinstating him into the Navy. The district court held that his action was barred by the applicable statute of limitation, and entered judgment in favor of the Navy.
 
 II. DISCUSSION
 
 7
 Nichols does not dispute the applicability of the six-year limitation period of 28 U.S.C. Sec. 2401(a) to his claims. See Saffron v. Department of the Navy, 561 F.2d 938, 941-46 (D.C.Cir.1977), cert. denied, 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978); Werner v. United States, 188 F.2d 266, 268 (9th Cir.1951) (Sec. 2401(a) applies to equitable claims against the government). Rather, he advances three arguments for finding that the application of the statute to his case does not bar his claims. First, he contends that his cause of action did not accrue more than six years ago. Second, he maintains that administrative proceedings tolled the statute. Third, he argues that the Board for Correction of Naval Records' action in 1977 created a new cause of action for which the limitation period has not yet run. We address these arguments in turn.
 
 A. Accrual of the Cause of Action
 
 8
 Nichols seeks a declaration that his 1957 discharge from the Navy was void on the grounds that Navy officials (1) decided to discharge him before undertaking a proper investigation; (2) relied on an unsigned statement of another enlisted man as evidence of Nichols' homosexuality, where such reliance was contrary to Navy regulations; (3) coerced him into signing incriminating statements; (4) denied him legal counsel; (5) denied him information concerning the witnesses who accused him of homosexuality; (6) searched his personal belongings without cause; and (7) arbitrarily discharged him merely because of homosexuality.
 
 
 9
 In federal court, a cause of action accrues when an injury is discovered or should have been discovered through the exercise of reasonable diligence. NLRB v. Don Burgess Construction Corp., 596 F.2d 378, 382 (9th Cir.), cert. denied, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979); see Urie v. Thompson, 337 U.S. 163, 169-71, 69 S.Ct. 1018, 1024-1025, 93 L.Ed. 1282 (1949). Ordinarily, a cause of action for wrongful discharge occurs at the time of discharge. Bonen v. United States, 666 F.2d 536, 539 (Ct.Cl.1981), cert. denied, 456 U.S. 991, 102 S.Ct. 2273, 73 L.Ed.2d 1286 (1982); Mathis v. Laird, 324 F.Supp. 885, 887 (M.D.Fla.1971), aff'd per curiam, 457 F.2d 926 (5th Cir.), cert. denied, 409 U.S. 871, 93 S.Ct. 201, 34 L.Ed.2d 122 (1972). Therefore, Nichols' cause of action accrued in 1957 unless the wrongful nature of the discharge was undiscoverable until a later date.
 
 
 10
 The district court found that Nichols knew his discharge was wrongful at the outset. This finding is not clearly erroneous. Nichols began to complain of official misconduct and to seek upgrade of his discharge within thirty days of the discharge. Moreover, Nichols admitted as much in his opening brief: "I can not deny that I signed statements for Mr. Vickery, nor can I say that I did not know the reasons for my discharge." Opening Br., att. I, at 6. Nichols does allege that he could not have known of certain deviations from standard procedures until he received information under the Freedom of Information Act. This allegation counts for little because Nichols could have obtained that information in 1957 if he had filed suit then. This finding is also not clearly erroneous. If Nichols knew he had been wronged, he should have filed suit within the limitation period. See United States v. Kubrick, 444 U.S. 111, 124, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979).
 
 
 11
 We therefore conclude that Nichols' cause of action accrued in 1957.
 
 
 12
 B. Tolling Due to Administrative Proceedings
 
 
 13
 In this circuit, the general rule is that if prior resort to an administrative body is a prerequisite to review in court, the running of the limitation period will be tolled during the administrative proceeding. See Mt. Hood Stages, Inc. v. Greyhound Corp., 616 F.2d 394, 400-02, 405 (9th Cir.), cert. denied, 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980). This rule does not help Nichols. His appeals to the three Navy administrative bodies, even assuming they were required, were denied before the end of 1958. There is no indication in the record that Nichols initiated any more administrative proceedings in the years that followed.
 
 
 14
 C. Equitable Tolling Because of BCNR's 1977 Decision
 
 
 15
 Nichols argues that the 1977 decision of the Board for Correction of Naval Records (BCNR) either created a new cause of action in 1977 or suspended the running of the statute of limitation. Both claims are without merit.
 
 
 16
 First, although claims filed with the BCNR must be filed within three years, BCNR has explicit statutory discretion to excuse a late filing when "in the interest of justice." 10 U.S.C. Sec. 1552(b). BCNR's decision to entertain Nichols' late claim cannot suspend the six-year period of 28 U.S.C. Sec. 2401(a) because BCNR has no comparable authority to excuse lateness under that statute.
 
 
 17
 Next, no new cause of action accrued in 1977. Nichols does not challenge the BCNR decision upgrading the status of his discharge as arbitrary or capricious. To the extent he challenges the BCNR decision for failing to order his reinstatement, his challenge is precluded since he failed to ask for that relief in his petition to the BCNR. Bonen v. United States, 666 F.2d 536, 539-40 (Ct.Cl.1981), cert. denied, 456 U.S. 991, 102 S.Ct. 2273, 73 L.Ed.2d 1286 (1982); Homcy v. United States, 536 F.2d 360, 364-65, 210 Ct.Cl. 332, cert. denied, 429 U.S. 984, 97 S.Ct. 502, 50 L.Ed.2d 595 (1976).
 
 
 18
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Jesse W. Curtis, Senior United States District Judge for the Central District of California, sitting by designation