**Eugene C. SMALLS, Plaintiff,**

v.

**UNITED STATES of America; John H. Dalton, Secretary of the Navy; Department of the Navy; the Navy Board for Correction of Military Records; Department of Veterans Affairs, Medical & Regional Office of Honolulu, Hawaii; United States Marine Corps; Medical Board Region, Medical Clinic, Kaneohe Bay Honolulu; Central Physical Evaluation Board; Departments, Government or Governmental Agencies, Partnerships, Corporations, Non–Profit Organizations, and State Entities 1–1000, Defendants.**

**No. Civ. 98–00908SPKBMK.**

United States District Court, D. Hawai'i.

Feb. 29, 2000.

---

T. Stephen Leong, Law Offices of T. Stephen Leong, Honolulu, HI, for plaintiff.

Thomas A. Helper, Assistant U.S. Attorney, Steven S. Alm, United States Attorney, Honolulu, HI, for defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

SAMUEL P. KING, District Judge.

## I. INTRODUCTION

Plaintiff Eugene Smalls ("Plaintiff") seeks to upgrade his discharge from the U.S. Marine Corps ("Marine Corps"). The defendants named in the suit include the Secretary of the Navy, the Department of the Navy, and the Board for Correction of Naval Records ("BCNR") (collectively "Defendants"). Defendants move to dismiss the complaint as time-barred and for failure to meet the jurisdictional requirements of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* The Court grants the motion in part and denies it in part.

## II. BACKGROUND

Plaintiff served in the Marine Corps on active duty from June 29, 1978, to December 4, 1980. Plaintiff alleges that he experienced pain under the arches of his feet during a training exercise in 1979. Apparently, Plaintiff suffered from *ples planus,* or flat feet. A medical board determined he was entitled to an "honorable discharge." According to Plaintiff, the evidence supported a "military discharge." [1] It appears the Marine Corps discharged Plaintiff on December 4, 1980, although the complaint is unclear on this point.

Plaintiff appealed to the BCNR for a rehearing regarding his discharge status. He sought correction of his military record to reflect that his foot condition occurred in the line of duty. The BCNR denied his appeal on June 26, 1986, and again in November 1992.[2] In its second denial, the BCNR explained to him, "Although your feet became symptomatic during your period of naval service, there was no increase in severity beyond the natural progression of the preexisting condition." Am.Compl. ¶ 24. Plaintiff appealed to the Secretary of the Navy apparently on two occasions. On April 11, 1997, and again on January 5, 1998, the Secretary affirmed the BCNR's decision.

Plaintiff filed this action on November 12, 1998. This Court dismissed it without prejudice and with leave to amend for failure to comply with Rule 8(a) of the Federal Rules of Civil Procedure. Plaintiff then filed a verified amended complaint on November 9, 1999.

Plaintiff pleads three claims for relief: (1) judicial review of the BCNR's refusal to correct his military records, pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2); (2) negligent infliction of emotional distress ("NIED"); and (3) defamation. Defendants move to dismiss the amended complaint pursuant to Rules 12(b)(1) and (b)(6).

## III. ANALYSIS

### A. CORRECTION OF MILITARY RECORDS

According to Defendants, Plaintiff's APA claim accrued on December 4, 1980, when Plaintiff was discharged from the Marine Corps. The applicable limitations period is six years. *See* 28 U.S.C. § 2401(a). Plaintiff filed his initial complaint on November 12, 1998, nearly eighteen years after the date of his discharge. Thus, Defendants conclude, the APA claim is barred by the statute of limitations.

As an initial matter, Defendants rely on facts not in the record. The amended complaint does not state that Plaintiff was discharged on December 4, 1980, although that is a possible interpretation of Plaintiff's allegation that he ceased active duty service on that date. Defendants rely instead on the initial complaint and its voluminous exhibits, which establish December 4, 1980, as the discharge date.

■ The initial complaint has no relevance here. A complaint that has been amended is superseded and "treated thereafter as non-existent...." *Ferdik v. Bonzelet,* 963 F.2d 1258, 1262 (9th Cir.), *cert. denied,* 506 U.S. 915, 113 S.Ct. 321, 121 L.Ed.2d 242 (1992) (quoting *Loux v. Rhay,* 375 F.2d 55, 57 (9th Cir.1967)). Although the allegations in the amended complaint leave open a number of informational gaps, the Court must accept them as true in the context of a motion to dismiss. *See Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir. 1996). The Court's review under Rule 12(b) is limited to the four corners of the complaint. *See Mobley v. McCormick,* 40 F.3d 337, 339 (10th Cir.1994). Thus, De-

---

**1.** Plaintiff does not clearly specify the type of discharge he seeks. In his complaint, Plaintiff refers to "medical discharge" status in some places and to "military discharge" status in others.

**2.** It is unclear whether the BCNR issued its decision on the thirteenth or twenty-fifth of November since the complaint refers to both dates. This ambiguity does not prevent the Court from deciding the statute of limitations issue.

fendants cannot rely on the initial complaint to establish Plaintiff's date of discharge.[3]

█ A more crucial question is the nature of Plaintiff's claim, for that determines when the claim accrues. Two avenues of relief are available to former members of the armed forces seeking to upgrade their discharge status. First, after exhausting administrative remedies, they may seek declaratory and injunctive relief against the appropriate branch of service, challenging their discharge as a violation of the Constitution, statute, or service regulations. *See Geyen v. Marsh,* 775 F.2d 1303, 1306 (5th Cir.1985), *aff'd,* 849 F.2d 1469 (1988). Second, if they are unsuccessful in obtaining relief from an appropriate agency such as the BCNR, they may seek judicial review of the agency's decision under the APA. *See Dougherty v. United States Navy Bd. for Correction of Naval Records,* 784 F.2d 499, 500–01 (3d Cir.1986). Each avenue supports a different cause of action. *See, e.g., Blassingame v. Secretary of the Navy,* 811 F.2d 65 (2d Cir.1987); *Smith v. Marsh,* 787 F.2d 510 (10th Cir.1986); *Geyen,* 775 F.2d 1303; *Bittner v. Secretary of Defense,* 625 F.Supp. 1022 (D.D.C.1985); *but see Hurick v. Lehman,* 782 F.2d 984 (Fed. Cir.1986). And, as discussed below, each cause of action accrues at a different time.

Defendants do not differentiate between the two actions. Their time-bar argument rests on the notion that a decision of a corrections board does not toll the six-year limitations period because it does not create a new cause of action. *See Nichols v. Hughes,* 721 F.2d 657, 660 (9th Cir.1983). The Court reads *Nichols* more narrowly.

In *Nichols,* the plaintiff was discharged from the Navy in 1957. He unsuccessfully petitioned various military administrative agencies for an upgrade in his discharge status, including the BCNR, from 1957 to 1958. He appealed again to the BCNR in 1975, and this time, in 1977, he successfully obtained an upgrade. The plaintiff then filed suit in 1979 to have his discharge declared void. The Ninth Circuit held that his action for wrongful discharge accrued at the time of his discharge. *See id.* at 659. The court also held that the BCNR's decision in 1977 did not give rise to a new cause of action or toll the statute of limitations. *See id.* at 660.

*Nichols* is inapposite here because it does not address whether wrongful discharge is an action separate from one for correction of a service record. The Ninth Circuit itself has recognized that *Nichols* did not deal with an action for correction of a service record. *See Guerrero v. Marsh,* 819 F.2d 238, 241–42 (9th Cir. 1987); *see also Dougherty,* 784 F.2d at 502 (distinguishing *Nichols* on the same ground). The holding in *Nichols* is limited to wrongful discharge actions. As such, *Nichols* does not disturb the rule articulated by a majority of courts that a former serviceman can maintain separate causes of action for wrongful discharge and correction of service records.

Although no model of clarity, Plaintiff's amended complaint sufficiently states a claim for correction of his service record. Plaintiff brings his claim under the APA. The APA provides for judicial review of agency action—in this case, the BCNR's refusal to upgrade his discharge. Plaintiff is challenging the BCNR's decision, not the discharge itself.

Returning to Defendants' time-bar argument, then, the critical question is when Plaintiff's APA claim accrued. A six-year limitations period applies to actions against the United States. *See* 28 U.S.C. § 2401(a). The APA claim is clearly barred if it accrued at the time of Plaintiff's discharge. It is timely, however, if it accrued when the BCNR denied relief in November 1992. This is an issue of first impression in the Ninth Circuit. Accordingly, the Court seeks guidance from other jurisdictions.

---

**3.** However, Defendants are free to present information outside of the complaint in the context of a motion for summary judgment. *See* Fed.R.Civ.P. 12(c), 56(c).

A majority of the courts that have addressed the issue hold that an action for correction of records accrues when the correction board renders its decision. *See Blassingame,* 811 F.2d 65; *Smith,* 787 F.2d 510; *Dougherty,* 784 F.2d 499; *Geyen,* 775 F.2d 1303; *Lewis v. Secretary of the Navy,* Civ. A. No. 89–1446, 1990 WL 454624 (D.D.C. June 29, 1990). The Federal Circuit, which does not recognize a separate action for correction of records, holds that all causes of action related to unlawful discharge accrue when the service member is discharged. *See Hurick,* 782 F.2d 984; *Mitchell v. United States,* 26 Cl.Ct. 1329 (1992); *Wilson v. United States,* No. 124–82C, 1982 WL 25819 (Ct. Cl. Sept.3, 1982).

■ There are compelling reasons for following the majority rule. First, the rule acknowledges that an action for wrongful discharge is distinct from judicial review of a correction board's refusal to upgrade a discharge. *See Blassingame,* 811 F.2d at 72–73. "[T]he focus of the former is on the action of the discharge officials whereas the focus of the latter is on the action of the [Correction] Board." *Id.* at 72. It follows that each action accrues at a different time.

Second, a contrary rule subjects certain correction board decisions to judicial review, but not others. As the Second Circuit explained:

> The position urged by the government, in contrast, would give some veterans the full six years [to seek judicial review] provided by 28 U.S.C. § 2401(a), others a period of less than six years and still others no review at all, depending on the time that had elapsed between discharge and the Correction Board decision. For example, a veteran who receives an adverse decision after discharge would have the remainder of the six-year limitation period to obtain judicial review, which can be some period of time between one day and six years. And, a veteran who receives an adverse Correction Board decision more than six years after discharge would have no opportunity to obtain judicial review.

*Id.* at 71–72; *see also Geyen,* 775 F.2d at 1309–10; *Lewis,* 1990 WL 454624, at *7. Following the majority rule avoids this anomalous result.

Third, since an action for correction of records involves judicial review based on the administrative record, the statute of limitations should begin to run when the administrative record is complete. *See Dougherty,* 784 F.2d at 501. That is, the action is not ripe for review until the correction board has rendered its final decision.

The Court is persuaded that the majority approach is sound. The inquiry is not at an end, however: Even assuming Plaintiff's APA claim accrued when the BCNR denied his claim, Defendants dispute which of the BCNR's two decisions commenced the limitations period. The BCNR denied Plaintiff's claim on June 26, 1986, and again on November 13, 1992. Defendants argue that the limitations period began on the date of the first decision because, under *Nichols,* a second correction board decision does not create a new cause of action.

■ Again, *Nichols* does not control the result of this case. As discussed, *Nichols* did not involve a challenge of a BCNR action. *Nichols* merely held that, for purposes of a wrongful discharge action, the limitations period begins running at the time of discharge, and it is not tolled by the pursuit of a permissive remedy such as an appeal to the BCNR. *Nichols* is not inconsistent with the majority approach which sets the time of accrual at the date of the correction board's last decision.

Therefore, Plaintiff's APA claim accrued at the earliest on November 13, 1992, when the BCNR last denied his request for an upgrade in discharge status.[4]

4. As noted in note 2, *supra,* it is inconsequential whether the date of the BCNR's last decision was the thirteenth or twenty-fifth of November 1992. Plaintiff's APA claim is timely either way.

Plaintiff filed the initial complaint on November 12, 1998, within six years after the BCNR's decision. Under the majority rule, which the Court adopts, his APA claim is timely. Plaintiff may seek judicial review of the BCNR's denial of his appeal.[5]

### B. *NIED*

■ Plaintiff's NIED claim is subject to the requirements of the FTCA. Exhaustion of administrative remedies is a prerequisite to suit under the FTCA. *See* 28 U.S.C. § 2674. Plaintiff does not allege that he presented his NIED claim to an administrative agency within his branch of service. Accordingly, his NIED claim is barred.

### C. *DEFAMATION*

■ The FTCA specifically bars claims arising out of defamation:

The provisions of [the Federal Tort Claims Act] and section 1346(b) of this title shall not apply to—

. . . . .

(h) Any claim arising out of . . . libel, slander

. . . . .

28 U.S.C. § 2680(h). Plaintiff's defamation claims are thus barred.

### IV. *CONCLUSION*

For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss insofar as it seeks dismissal of the action to correct Plaintiff's service record, and GRANTS the motion to the extent it seeks dismissal of the NIED and defamation claims.

IT IS SO ORDERED.

**5.** However, to the extent Plaintiff seeks damages in connection with his APA claim, the Court denies such relief because the APA does not allow recovery of damages. *See* 5 U.S.C. § 702.